1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| UNITED STATES OF AMERICA, | CASE NO. 14CR305 WQH |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| VIKTOR NIKOLAYEVICH PAVLOVICH, | |
| Defendant. | |

11
12
13
14
15
16

HAYES, Judge:

The matter before the Court is the motion to dismiss the indictment pursuant to 8 U.S.C. § 1326(d) filed by Defendant Viktor Nikolayevich Pavlovich.(ECF No. 20)

## BACKGROUND FACTS

On April 10, 2002, Defendant was admitted to the United States as a refugee under section 208 of the Immigration and Nationality Act.

On January 4, 2010, a Notice To Appear was issued to Defendant alleging that he was removeable based upon two crime of moral turpitude, specifically, a September 21, 2009 conviction in the District Court of King County, State of Washington for the offense of Theft in the third degree, in violation of RCW 9A.56.050(2); and a November 12, 2008 conviction in the Superior Court of King County, State of Washington for the offense of Residential Burglary, in violation of RCW 9A.52.025. (ECF No. 20-2 at 3).

On May 10, 2010, Defendant entered a plea of guilty to Robbery in the first

- 1 -

1   degree in violation of RCW 9A56.200(I) (A)(II) and 9A.56.190.  In the plea agreement,

2   Defendant admitted:

> 3   On or about May 2, 2009 in King County Washington. I along with Oleg
> V. Sadakha, Slavok M. Potapchuk and Maksim I. Mayba unlawfully and
> 4   with intent to commit theft or personal property of another by use of force
> or threatened use of force stole money and guns from Ian Plunkett &
> 5   Mikael Woo.  On that occassion (sic) I along with the aforementioned
> individuals were armed when we stole money &guns from Mr. Woo &
> 6   Mr. Plunkett.

7   (ECF No. 21-2 at 11).

8          On June 10, 2010, Judgment was entered in the Robbery case and Defendant was

9   sentenced to 57 months imprisonment. *Id.* at 21.  The immigration proceedings were

10  administratively closed after Defendant was transferred out of immigration custody.

11         On September 10, 2012, Defendant was released from state prison and again

12  placed into immigration custody.  The Department of Homeland Security immediately

13  requested that Defendant's immigration proceedings be placed on the master calendar

14  before an immigration judge.

15         On October 3, 2012, the Department of Homeland Security filed "Additional

16  Charges of Inadmissibility/Deportability" alleging "[y]ou were, on June 2, 2010,

17  convicted in the Superior Court of the State of Washington for the County of King in

18  Seattle, WA for the offense of Robbery in the First Degree, in violation of RCW

19  9A.56.200(1)(a)(ii) and 9A.56.190 for which a prison sentence of fifty seven (57)

20  months was imposed."  (ECF No. 20-2 at 6).

21         On October 23, 2012, an Immigration Judge denied Defendant's request for bond

22  on the grounds that she had no jurisdiction to set bond under 8 U.S.C. § 1226(c), which

23  required detention of aliens deportable on the grounds of an aggravated felony.

24         On November 1, 2012, a hearing was held before the Immigration Judge.

25  Defendant through counsel, admitted that he has been convicted of Robbery in the First

26  degree as charged in the "Additional Charges of Inadmissibility/Deportability."

27  Defendant through counsel, admitted that the offense was "an aggravated felony crime

28  of violence."  (ECF No. 32-1 at 3).  Defendant through counsel, applied for several

1    forms of relief from deportation, including: 1) asylum, 2) withholding of removal, 3)

2    deferral of removal under the Convention Against Torture, and 4) adjustment of status

3    from Refugee to Legal Permanent Resident.  (ECF No. 21-3 at 2-3).

4          On April 2, 2013, Defendant, through counsel, submitted a motion to withdraw

5    his applications for relief from deportation and to expedite his next scheduled hearing

6    so that he could be deported as soon as possible.  At the time that he made this request,

7    Defendant had been in immigration custody for 186 days and his immigration hearing

8    was scheduled for May 6, 2013.

9          On April 15, 2013, Defendant appeared before an Immigration Judge.  The

10   Immigration Judge found that Defendant had knowingly withdrawn his pending

11   applications for relief from removal and Defendant was ordered removed from the

12   United States to Ukraine.

13         On April 16, 2013, the Court of Appeals for the Ninth Circuit issued an opinion

14   in *Rodriguez v. Robbins*, 715 F.3d 127 (9th Cir. 2013) holding that the prolonged

15   detention of an alien without an individualized determination of dangerousness or flight

16   risk would be "constitutionally doubtful." *Id*. at 1137.  The Court of Appeals stated:

17   "[w]e conclude that, to avoid constitutional concerns, 1126(c)'s mandatory language

18   must be construed to contain an implicit 'reasonable time' limitation, the application of

19   which is subject to federal-court review."   *Id*. at 1138 (quotations omitted).

20         On April 19, 2013, Defendant filed a Notice of Waiver of Appeal.

21                              **CONTENTIONS OF THE PARTIES**

22         Defendant contends that the April 15, 2013 removal order is invalid on the

23   grounds that he was not deportable as charged.  Defendant asserts that his 2010

24   conviction for first degree robbery under Wash. Rev. Code § 9A.56.210 is not a

25   categorical aggravated felony and the immigration judge wrongfully sustained the only

26   charged grounds of deportation.  Defendant contends that he was eligible for at least

27   four forms of relief for removal, even if deportable as charged, and that he was

28   improperly deprived of his opportunity to pursue such relief.

14CR305 WQH

1    Defendant further contends that he was denied an individualized bond

2  determination and held indefinitely in violation of his due process rights.  Defendant

3  asserts that his waiver of the right to an administrative hearing did not comport with due

4  process on the grounds that he was never advised by his attorney that he was eligible

5  for bail determination pursuant to *Rodriguez v. Robbins*, even though his immigration

6  attorney submitted a written waiver of his appeal three days after the decision was filed.

7  Defendant asserts that the waiver of appeal was signed only by his counsel and that he

8  would not have waived his right to appeal if he knew he could apply for bail.

9  Defendant further asserts that his waiver of appeal was not voluntary because it was the

10  product of a prolonged, illegal and inherently coercive detention.

11    Plaintiff United States of America contends that the Defendant's 2010 first

12  degree robbery conviction is a categorical crime of violence under 18 U.S.C. §16(a) and

13  (b).  Plaintiff further asserts that Defendant's 2010 first degree robbery conviction is

14  plainly divisible and a crime of violence under the modified categorical approach.

15  Plaintiff asserts that Defendant was deportable as charged for an aggravated felony and

16  that relief from removal was barred or not plausible based upon Defendant's extensive

17  criminal history.  Finally, Plaintiff asserts that Defendant suffered no due process

18  violation when the immigration judge concluded that he was not entitled to bond.

19  Plaintiff asserts that *Rodriguez* was the progeny of a line of cases indicating that bond

20  hearings are required for immigration detentions lasting more than six months and that

21  nothing prevented Defendant from requesting a new bond hearing after his detention

22  reached the six month mark.

23                          **APPLICABLE LAW**

24    A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth

25  Amendment right to collaterally attack his removal order because the removal order

26  serves as a predicate element of his conviction.  *United States v. Mendoza-Lopez*, 481

27  U.S. 828, 837-38 (1987). To sustain a collateral attack under 8 U.S.C. § 1326(d), a

28  defendant must demonstrate that (1) he exhausted all administrative remedies available

1  to him to appeal his removal order, (2) the underlying removal proceedings at which the

2  order was issued improperly deprived him of the opportunity for judicial review, and

3  (3) the entry of the order was fundamentally unfair. *United States v. Ubaldo–Figueroa*,

4  364 F.3d 1047, 1048 (9th Cir. 2004). An underlying deportation order is

5  "fundamentally unfair" if (1) the defendant's due process rights were violated by defects

6  in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the

7  defects. Id.

8       An alien cannot collaterally attack an underlying deportation order if he validly

9  waived the right to appeal that order. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th

10  Cir. 2000). However, the exhaustion requirement of 8 U.S.C. 1326(d) "cannot bar

11  collateral review of a deportation proceeding when the waiver of right to an

12  administrative appeal did not comport with due process." *United States v. Muro–Inclan*,

13  249 F.3d 1180, 1183 (9th Cir. 2001).

14                **RULING OF THE COURT**

15  **Aggravated felony**

16       Under 8 U.S.C. § 1101(a)(43)(F) the term "aggravated felony" means "a crime

17  of violence (as defined in section 16 of Title 18, but not including a purely political

18  offense) for which the term of imprisonment [] at least one year."  8 U.S.C. §

19  1101(a)(43)(F) . An offense is a "crime of violence" under section 16 of Title 18 if it

20  is:

21      (a) an offense that has as an element the use, attempted use, or threatened
use of physical force against the person or property of another, or
22  (b) any other offense that is a felony and that, by its nature, involves a
substantial risk that physical force against the person or property of
23  another may be used in the course of committing the offense.

24  18 U.S.C. § 16.

25       To determine whether Defendant's 2010 conviction for robbery in the first degree

26  is a "crime of violence" under § 16, the Court first applies the categorical approach set

27  forth in *Taylor v. United States*, 495 U.S. 575 (1990), under which courts compare the

28  statute of conviction with the generic federal offense to determine whether the latter

1 encompasses the former. *Hernandez–Cruz v. Holder*, 651 F.3d 1094, 1100 (9th Cir.

2 2011).

3       Washington's robbery statute provides:

4     A person commits robbery when he or she unlawfully takes personal
property from the person of another or in his or her presence against his

5 or her will by the use or threatened use of immediate force, violence, or
fear of injury to that person or his or her property or the person or property

6 of anyone. Such force or fear must be used to obtain or retain possession
of the property, or to prevent or overcome resistance to the taking; in

7 either of which cases the degree of force is immaterial. Such taking
constitutes robbery whenever it appears that, although the taking was fully

8 completed without the knowledge of the person from whom taken, such
knowledge was prevented by the use of force or fear.

9

10 Wash. Rev.Code § 9A.56.190. (Emphasis added.) The language "use or threatened

11 use of immediate force, violence, or fear or injury" is similar to the language used in 8

12 U.S.C. § 16(a). However, Washington court have stated: "Any force or threat, no

13 matter how slight, which induces an owner to part with his property is sufficient to

14 sustain a robbery conviction." *State v. Ammlung*, 31 Wash. App. 696, 704 (1982)

15 (finding that blocking the victim's path to her vehicle at the time victim's keys were

16 taken during a robbery of the victim's car was a sufficient threat of force under the

17 robbery statute).

18       18 U.S.C. § 16(a) requires that the force necessary to constitute a crime of

19 violence "must actually be violent in nature." *Singh v. Ashcroft*, 386 F.3d 1228, 1233

20 (9th Cir.2004). In *United States v. Alvarado-Pineda*, 2012 WL 4433283 (S.D. Cal.

21 2012), Judge Moskowitz concluded that the "Washington case law has construed §

22 9A.56.190 as encompassing acts that are not violent in nature." *Id*. at *2. The district

23 court concluded:

24     Because even the minimal use or threatened use of force may satisfy the
elements of robbery under the Washington statute, the Court concludes

25 that a conviction under the statute is not categorically a crime of violence
under § 16(a). The modified categorical approach does not help the

26 government because the guilty plea documents do not set forth the facts
of the crime but merely mimic the language of the statute.

27     Although Defendant's robbery conviction does not qualify as a crime of
violence under 18 U.S.C. § 16(a), the Court finds that it qualifies under the

28 residual clause of 18 U.S.C. § 16(b). Under § 16(b), an offense is a crime
of violence if it is a felony "that by its nature, involves a substantial risk

                                                                       

1
2

that physical force against the person or property of another may be used in the course of committing the offense."

*Id.* at *4.  The district court explained: "Due to the nature of the crime, there is

3
4

substantial risk that physical force will be used during the commission of the crime,

5

even if it was not the original intent to the perpetrator."  *Id*.

6

In this case, the Court concludes that Defendant's 2010 conviction for first degree

7

robbery under RCW § 9A.56.190 is a crime of violence under 18 U.S.C. § 16(b).  The

8

Washington robbery statute, RCW § 9A.56.190 defines an offense committed when a

9

person "unlawfully takes personal property from the person of another or in his or her

10

presence against his or her will by the use or threatened use of immediate force,

11

violence, or fear of injury to that person or his or her property or the person or property

12

of anyone."  The statute further provides that the "degree of force is immaterial" when

13

the force or fear is used "to obtain or retain possession of the property, or to prevent or

14

overcome resistance to the taking."  RCW § 9A.56.190.  Any amount of force used to

15

obtain or retain a person's property under the Washington statute is inherently

16

dangerous and involves a substantial risk that physical force will be used in the

17

commission of the offense.  *See United States v. McDougherty*, 920 F.2d 569 (9th Cir.

18

1990)(finding the California robbery statute is a crime of violence under 18 U.S.C.

19

§16(b)).   The Court finds that the least amount of force required under RCW §

20

9A.56.190 is "by its nature, involves a substantial risk that physical force against the

21

person or property of another may be used in the course of committing the offense."

22

18 U.S.C. § 16(b).

23

The Court further concludes that Defendant's 2010 conviction for first degree

24

robbery under RCW § 9A.56.190 would qualify as a crime of violence under the

25

modified categorical approach, even if RCW § 9A.56.190 is not a categorical crime of

26

violence.   The conviction documents in this case which were available to the

27

immigration judge set forth Defendant's admissions that he was armed along with other

28

and that he "unlawfully and with intent to commit theft or personal property of another

by use of force or threatened use of force stole money and guns."  (ECF No. 21-2 at 11).

1   The judicially noticeable documents conclusively demonstrate that there was substantial

2   risk that physical force would be used during the commission of the crime, and that this

3   was the original intent of the perpetrator.

4        The Court concludes that Defendant was deportable as charged in the Notice To

5   Appear for an aggravated felony.

6   **Improperly deprived of his opportunity to pursue relief**

7        In this case, the record demonstrates conclusively that Defendant withdrew his

8   applications for relief from deportation and waived his right to appeal. On April 2,

9   2013, Defendant, through counsel, submitted a motion to withdraw his applications for

10  relief from deportation and to expedite his next scheduled hearing so that he could be

11  deported as soon as possible.  The record in this case includes a letter dated March 14,

12  2013 from Defendant's counsel retained to represent him in the immigration

13  proceedings to Defendant which states in part "You have informed us that you no

14  longer want to pursue your immigration case and would like to withdraw your

15  applications for relief from removal and depart the United States. ... By withdrawing

16  your applications for relief from removal, you will be giving up the right to an

17  individual hearing before an Immigration Judge. ...  Once you depart from the United

18  States under an order of removal, you will be inadmissible to the United States for 20

19  years. ...  Additionally, if you are ordered removed to Ukraine your refugee status will

20  be terminated."  (ECF No. 21-4 at 6-7).  The letter concludes: "If you understand the

21  above immigration consequences of your decision to withdraw the applications for

22  relief from removal, and if you still desire to withdraw your applications for relief and

23  accept an order of removal, please sign below and return this letter to me."  *Id.* at 7.

24  Defendant signed the letter under the following statement "I have read the above.  I

25  understand the immigration consequences of my withdrawal of the applications for

26  relief from removal, and I hereby request that Gibbs Houston Pauw withdraws my

27  application for relief on my behalf."  *Id.*   The record further includes a document

28  handwritten by Defendant stating:

1
2
3

        I Viktor Pavolovich ask that all my applications be withdrawn Adjustment of Status, Withholding of Removal, and Convention against Torture. I ask that the courts give me a new, earlier court date so I can be deported. Thank you.
Viktor Pavolovich

4    (ECF No. 21-4 at 8).

5         On April 15, 2013, the immigration Judge held a hearing and found that

6 Defendant knowingly withdrew his pending application for relief from removal. (ECF

7 No. 32-1 at 6).  There is no evidence that Defendant was misinformed by his counsel

8 of his right to pursue bond. *Rodriguez v. Robbins* did not announce a new rule which

9 supports a conclusion that Defendant's decision to withdraw his application for relief

10 from removal and his right to appeal did not comport with due process. *See Rodriguez*

11 *v. Robbins* , 715 F.3d at 1138 ("Consistent with our previous decisions, we conclude

12 that, to avoid constitutional concerns, § 1226(c)'s  mandatory language must be

13 construed to contain an implicit reasonable time limitation, the application of which is

14 subject to federal-court review." (internal quotations omitted)).

15         Defendant had been in immigration custody for 186 days at the time that he

16 withdrew his applications for relief from removal and waived his right to appeal.  His

17 immigration hearing was scheduled for 22 days later.  There are no facts which would

18 support the conclusion that his decision to withdraw his applications for relief from

19 removal and to waive appeal for the purpose of facilitating his removal was

20 misinformed, not voluntary, or resulted from a violation of his due process rights.

21 Defendant was removeable as charged and knowingly waived his right to apply for

22 relief from removal and any right to appeal his removal.

23 **Relief from removal**

24         Even if Defendant's decision to withdraw his application for relief from removal

25 and waive his right to appeal was a result of a due process defect, Defendant "must

26 demonstrate that prejudice resulted from the asserted procedural defect. (Citation

27 omitted).  To meet this burden Defendant must demonstrate plausible grounds for relief

28 from deportation." *United States v. Garcia-Martinez*, 228 F.3d 956, 963 (9th Cir.

1  2000).  Defendant asserts that he was eligible for at least the following five forms of

2  relief from removal: 1) asylum, 2) withholding of removal under 8 U.S.C. § 1231(b)(3),

3  3) relief under the Convention Against Torture, 4) refugee waiver under 8 U.S.C.

4  §1159(c), and 5) voluntary departure.

5        The Court has concluded that Defendant's 2010 conviction for Robbery under

6  RCW 9A.52.025 is an aggravated felony. Defendant concedes that applicants with

7  aggravated felony convictions are statutorily ineligible for asylum.  8 U.S.C.

8  §1158(b)(2)(B)(i); *see also  Rendon v. Mukasey*, 520 F.3d 967, 973 (9th Cir. 2008) ("an

9  applicant for withholding of removal is ineligible for relief if he has been convicted of

10  certain types of aggravated felonies.").

11        The Court further finds that Defendant has not demonstrated a plausible grounds

12  for discretionary relief under withholding of removal under 8 U.S.C. § 1231(b)(3),

13  refugee waiver under 8 U.S.C. §1159(c), or voluntary departure.  The Court of Appeals

14  for the Ninth Circuit has "held that aliens have no fundamental right to discretionary

15  relief from removal for the purposes of due process and equal protection."  *Munoz v.*

16  *Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003).  In order to determine whether to grant

17  discretionary relief from deportation, including voluntary departure and adjustment of

18  status the Board of Immigration Appeals is required to examine "all the facts and

19  circumstances of a particular case," including a defendant's criminal convictions.

20  *Paredes-Urrestarazu v. INS*, 36 F.3d 801, 810 (9th Cir. 1994), *see also Delgado-*

21  *Chavez v. INS*, 765 F.2d 868, 869 (9th Cir. 1985) ("Convictions may not render an alien

22  statutorily ineligible for voluntary departure.  Rather, a conviction may be considered

23  as an adverse factor in deciding whether the favorable exercise of discretion is

24  warranted."); and In *Matter of Jean*, 2002 WL 968631 (BIA 2002) (reversing the BIA's

25  decision to grant adjustment of refugee status to an alien who engaged in violent

26  criminal acts).

27        In this case, Defendant's multiple convictions, and his violent, aggravated felony

28  which resulted in a lengthy sentence would have weighed heavily against discretionary

1    relief.  Defendant suffered his first criminal conviction for residential burglary in 2008

2    at the age of nineteen, six years after his legal admission to the United States.

3    Subsequent to this initial conviction, Defendant was convicted fo theft in 2009 and first

4    degree burglary in 2010.  Defendant received a 57 month sentence for his first degree

5    burglary conviction.  The Court finds that there are no facts to demonstrate that other

6    factors would outweigh Defendant's serious, violent criminal history and that

7    Defendant would have received any discretionary form of relief from deportation.

8           The Court has reviewed the Defendant's declaration in support of his Application

9    for relief under the Convention against Torture.  The Court concludes that the evidence

10   in this record does not demonstrate relief under the high standards of a CAT claim

11   would have been plausible.  In order to obtain relief under the Convention Against

12   Torture, the burden of proof is on the applicant ... to establish that it is more likely than

13   not that he or she would be tortured if removed to the proposed country of removal."

14   8 C.F.R. §1208.16(c)(2).  Immigration judges consider: "(i) Evidence of past torture

15   inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of

16   the country of removal where he or she is not likely to be tortured; (iii) Evidence of

17   gross, flagrant or mass violations of human rights within the country of removal, where

18   applicable; and (iv) Other relevant information regarding conditions in the country of

19   removal.) §1208.16(c)(3).  Torture is "any act by which severe pain or suffering,

20   whether physical or mental, is intentionally inflicted on a person" for the  purposes

21   obtaining information or a confession, punishment, intimidation, coercion, or

22   discrimination." *Nuru v. Gonzales*, 404 F.3d 1207, 1217 (9th Cir. 2005).

23          The Court concludes that Defendant's declaration and State Department Report

24   do not provides evidence that plausibly support a claim that he would be subjected to

25   torture if removal to Ukraine.  Defendant in this case knowingly and voluntarily

26   withdrew his application under the Convention against Torture in an effort to expedite

27   his return to the Ukraine.

28

14CR305 WQH

1

**CONCLUSION**

2       IT IS HEREBY ORDERED that the motion to dismiss the indictment pursuant

3  to 8 U.S.C. § 1326(d) filed by Defendant Viktor Nikolayevich Pavlovich (ECF No. 20)

4  is denied.

5  DATED:  November 19, 2014

6

**WILLIAM Q. HAYES**
7  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28